J-A09020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :              PENNSYLVANIA
                                         :
                     v.                       :
                                         :
RYAN ALLEN PETERSEN,          :
                                         :
                Appellant           :     No. 1039 WDA 2017

Appeal from the Judgment of Sentence June 12, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0005482-2016

BEFORE: BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 06, 2018**

Appellant, Ryan Allen Petersen, appeals from the Judgment of Sentence entered by the Allegheny County Court of Common Pleas after his convictions by a jury of Indecent Assault of a person less than 13 years of age, Unlawful Contact with a Minor, Corruption of a Minor, and Endangering the Welfare of a Child.[1]  We affirm on the basis of the trial court's October 27, 2017 Opinion.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the underlying facts.  **See** Trial Court Opinion, filed 10/27/17, at 3-7.  Briefly, Appellant lived with the child-victim and her mother in both Erie and Pittsburgh.  Appellant was mother's fiancé.  In December 2014, when she was five years old, the victim told her father that Appellant had touched her inappropriately over her

---

[1] 18 Pa.C.S. § 3126(a)(7); 18 Pa.C.S. § 6318(a)(1); 18 Pa.C.S. § 6301(a)(1)(ii); and 18 Pa.C.S. § 4304(a)(1), respectively.

clothes, "on her 'private part' that she uses to 'go to the bathroom' where she does 'number 1[.'"] Trial Court Opinion at 4-5.

The victim's father immediately reported the abuse to police, and the child-victim gave a recorded interview with the Child Advocacy Center at Children's Hospital of Pittsburgh. During this interview, the child-victim denied that any abuse had occurred.[2]

Fourteen months later in February 2016, the child-victim had a second recorded interview with the Child Advocacy Center in which she disclosed the details of Appellant's abuse. Police arrested Appellant and charged him with one count each of Indecent Assault of a person less than 13 years of age, Unlawful Contact with a Minor, Corruption of a Minor, and Endangering the Welfare of a Child.

Appellant filed several pre-trial motions and subpoenas to obtain records related to the child-victim from various child-services organizations, including Pittsburgh Action Against Rape ("PAAR"), a rape crisis center providing sexual assault counseling to victims. PAAR filed a Motion to Quash Appellant's Motion and subpoena, which the trial court granted.

---

[2] At the time of the first interview, the child-victim lived with her mother. N.T. Trial, 3/20/17, at 59. The child-victim testified at trial that her mother told her to lie and tell "a different truth," and that she did not tell the truth about Appellant touching her because she was scared she would never see her mother again.

Appellant requested a jury trial. At trial, the child-victim testified that this abuse occurred when she was two or three years old, and again when she was six years old. The child-victim testified that Appellant had abused her in Erie and Pittsburgh while her mother was at work or in the shower. In her forensic interview, the child-victim also testified that, during the abuse, Appellant instructed her to look up at butterflies and not to tell anyone. Trial Court Opinion at 3. The jury also heard testimony from Detective Sellers, Appellant, the victim's mother, the victim's father, and character witness Matthew Wakefield.

On March 21, 2017, the jury convicted Appellant of the above offenses.

On June 12, 2017, the trial court sentenced Appellant to an aggregate term of 11 to 22 months' incarceration, followed by 5 years' probation. Appellant filed a Post-Sentence Motion, which the trial court denied on June 19, 2017.

On July 11, 2017, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

[1.] Whether the evidence was insufficient as a matter of law as to the charge of unlawful contact with minor 18 Pa.C.S.[] § 6318(a)(1)?

[2.] Whether the trial court erred in not providing an *in camera* review of the PAAR materials after or before quashing both [Appellant's] Motion to Compel production of PA[A]R records and the subpoena to PAAR for records pertaining to the victim?

- 3 -

[3.] Whether the verdict was against the weight of the evidence as to all charges?

Appellant's Brief at 6.

**Sufficiency of the Evidence**

Appellant first challenges the sufficiency of the evidence supporting his conviction for Unlawful Contact with a Minor. Appellant's Brief at 16-22. Appellant specifically challenges the element of "contact" insofar as Appellant's statements to the victim "not to tell" anyone about the abuse "was not stated in furtherance of or directing the child during the alleged contact[,] which is a necessary component of the offense." *Id.* at 20. Appellant also claims that his statements instructing the victim to look at "butterflies" during the abuse did not constitute "substantive evidence." *Id.* at 17.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court

may not weigh the evidence and substitute its judgment for the fact-finder."

***Id.***

A person is guilty of Unlawful Contact with a Minor if he or she is intentionally in contact with a minor for the purpose of engaging in a prohibited Chapter 31 sexual offense. 18 Pa.C.S. § 6318(a)(1). This Court has explained that this crime "is best understood as unlawful communication with a minor." ***Commonwealth v. Leatherby***, 116 A.3d 73, 79 (Pa. Super. 2015) (citation and quotation marks omitted). The statutory definition of "Contacts" includes "a communicative message." ***Commonwealth v. Velez***, 51 A.3d 260, 266 (Pa. Super. 2012). ***See also*** 18 Pa.C.S. § 6318(c).

The Honorable Jill E. Rangos, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's sufficiency claim. ***See*** Trial Court Opinion at 7-8 (concluding that there is no merit to Appellant's sufficiency claim because of, *inter alia*, "the physical acts, the direct contact of Appellant with [the victim], as well as his statements to her in connection with the physical actions. When Appellant inappropriately touched the child, he told her not to tell. Furthermore, Appellant told the child to look up, saying to her 'that's where the butterflies are' so that he could distract her while he touched her inappropriately. These two statements constitute communication to [the victim] for the purpose of engaging in prohibited activity."). We, thus, affirm on the basis of the trial court's October 27, 2017 Opinion.

**Sexual Assault Counselor Privilege**

Appellant next argues that the trial court erred in not reviewing the child-victim's confidential records *in camera* and not providing him any records not covered by the sexual assault counselor privilege. Appellant's Brief at 22-28. In particular, Appellant complains that the trial court did not review these privileged materials and provide to him any "statements made by the victim that were material to the alleged incident[.]" *Id.* at 25. Appellant avers that this Court previously endorsed this procedure of *in camera* review of privileged documents under similar circumstances in *Commonwealth v. Cody*, 584 A.2d 992, 996 (Pa. Super. 1991).

We review a trial court's order quashing a defendant's pre-trial motion to compel discovery for an abuse of discretion. *Commonwealth v. Fleming*, 794 A.2d 385, 387 (Pa. Super. 2002) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* (citation and internal quotation marks omitted).

The Sexual Assault Counselor Privilege, originally enacted in 1981 and amended in 1990 and 2000, provides: "No sexual assault counselor or an interpreter translating the communication between a sexual assault counselor and a victim may, without the written consent of the victim, disclose the

victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding." 42 Pa.C.S. § 5945.1. "The privilege created by 42 Pa.C.S. § 5945.1 is an absolute privilege, which is not overcome even by the constitutional rights of a criminal defendant." *V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325, 1329 (Pa. Super. 1998) (citations and footnote omitted). *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 501.07[6] (2018 ed. LexisNexis Matthew Bender).

After a thorough review of the certified record, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's claim. Accordingly, we affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion at 9-10 (holding that it properly denied Appellant's Motion to Compel Production of the confidential records because: (1) the records were privileged pursuant to 42 Pa.C.S. § 5945.1; (2) Appellant conceded that these records are protected by an "absolute" privilege; and (3) the privilege did "not bar effective cross-examination nor [did] it violate Appellant's due process rights.").

**Weight of the Evidence**

In his third issue on appeal, Appellant challenges the weight of the evidence because the child-victim "stated that she did not see or feel the alleged touching, she could not explain how she knew Appellant touched her, her memory is questionable due to the age when the acts took place and the

lapse in time from the alleged incident to the complaint." Appellant's Brief at 28-34.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert, supra*** at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.*** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." ***Id.*** at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was

not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.***

Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id***. (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a **palpable abuse of discretion**[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations omitted, emphasis in original).

A defendant concedes that sufficient evidence supports the verdict in a true challenge weight of the evidence and instead questions which evidence the fact-finder should have believed. ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

After a thorough review of the certified record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned trial court Opinion, we conclude that there is no merit to Appellant's challenge to the weight of the evidence. The trial court carefully evaluated the record and the

evidence before denying Appellant's weight claim. *See* Trial Court Opinion at 8-9.

Appellant essentially asks us to reassess the credibility of the child-victim and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience.

We discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Accordingly, Appellant is not entitled to relief.

The parties are instructed to attach a copy of the trial court's October 27, 2017 Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2018

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

v.

RYAN PETERSON,
Appellant

Appeal of:

RYAN PETERSON,
Appellant

CRIMINAL DIVISION

CC No. 201605482

**OPINION**

Honorable Jill E. Rangos
Courthouse
436 Grant Street
Pittsburgh, PA 15219

Copies to:

Robert E. Mielnicki
428 Forbes Avenue
Suite 400
Pittsburgh, PA 15219

Michael W. Streily
Office of the District Attorney
301 Courthouse
436 Grant Street
Pittsburgh, PA 15219

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

v.

RYAN PETERSON,
Appellant

CRIMINAL DIVISION

CC No. 201605482

## OPINION

**RANGOS, J.**

**October 27, 2017**

On March 21, 2017, a jury convicted Appellant, Ryan Peterson, of one count each of Indecent Assault, Unlawful Contact with Minor, Corruption of Minors, and Endangering the Welfare of Children.[1] This Court sentenced Appellant on June 12, 2017 to an aggregate term of eleven to twenty-two months of incarceration followed by five years of probation. Appellant filed a Post-Sentence Motion which this Court denied on June 19, 2017. Appellant filed a Notice of Appeal on July 11, 2017 and a Statement of Matters Complained of on July 18, 2017. On August 28, 2017 this Court granted Appellant's Motion to Make Recording of Forensic Interview of Victim a Part of the Record for Purposes of Appeal.

## MATTERS COMPLAINED OF ON APPEAL

Appellant alleges three errors on appeal. Appellant alleges that the evidence was insufficient as to the charge of Unlawful Contact. Appellant further alleges that the verdict was against the weight of evidence as to all charges. Lastly, Appellant alleges that this Court erred in either quashing

---

[1] 18 Pa. C.S. § 3126 (a) (7)), 18 Pa. C.S. § 6318 (a) (1), 18 Pa. C.S. § 6301 (a) (1) (ii), and 18 Pa. C.S. § 4304 (a) (1) respectively

2

Defendant's Motion to Compel Production of PAAR Records or in quashing his subpoena to PAAR for records pertaining to the victim. (Statement of Errors Raised on Appeal at 1, 2)

## SUMMARY OF THE EVIDENCE

Detective Brian Sellers, testified that he is a 22 year veteran of the City of Pittsburgh Police, and for the last six years he has been assigned to the Sex Assault Family Crisis Unit. (Transcript of Jury Trial on March 20 - 21, 2017, hereinafter TT, at 82) He testified that in December 2014 he received a police report that a female child was being touched by her mother's boyfriend. (TT at 83-84) Pursuant to his investigation, Det. Sellers contacted Tiffany Hoffman, the child's mother, to set up a forensic interview with the alleged victim, A.M. (TT 85) At this evaluation, which occurred in December 2014 at the Child Advocacy Center at Children's Hospital of Pittsburgh, A.M. denied that anyone had inappropriately touched her. (TT 50)

A second forensic interview occurred on February 6, 2016, which was recorded.[2] Detective Sellers stated, based on his experience and training, that a second interview is not uncommon and may be administered for a number of reasons, including circumstances when a victim was not ready to disclose at the first interview and to rule out coaching by of the victim by any party to the case. (TT 90) The Commonwealth admitted the recording of this forensic interview. (TT 118) Of note, A.M. disclosed that Appellant touched her over her clothes on the private part she uses to go to the bathroom. (Forensic interview, Feb. 6, 2016, at 10 (unnumbered)) A.M. stated that Appellant always made her look at something while he was molesting her. (Forensic interview at 11) Appellant told her to look up, where the butterflies are, because he knew that she likes butterflies. *Id.*

---

[2] Detective Sellers stated that the first interview, in late December 2014, was not recorded, due to then-existing policy, but the second interview in February 2016 was recorded, as the policy had changed. (TT 85, 89)

Michael McAfee, A.M's biological father, testified that in December 2014, A.M. said "Daddy, I have something to tell you" and then disclosed that Appellant had touched her inappropriately when her mother was not around. (TT 64) McAfee testified that A.M. was four or five years old at the time of this disclosure and he described her demeanor as ghostly. (TT 65) McAfee immediately called Hoffman. (TT 64) McAfee testified that Hoffman said, in response to the allegation against Appellant, "I don't believe that." *Id.* McAfee testified he next called 911 and took A.M. to Children's Hospital of Pittsburgh. (TT 65) McAfee attended, but did not observe, both forensic interviews. (TT 65, 66) McAfee testified that he did not tell A.M. what to say during either interview or at trial. (TT 67) McAfee testified that, six months to a year before A.M.'s disclosure, he had observed A.M. on one or two occasions inappropriately playing with herself in a sexual way. (TT 69-70)

McAfee further testified that he did not report to police as a tactic to gain full custody of his daughter. (TT 79) McAfee testified and that when A.M. was born, she lived with Hoffman in Erie and he had partial custody rights. (TT 72) A.M. and Hoffman moved to Pittsburgh approximately six to nine months prior to A.M.'s disclosure. (TT 73) When Hoffman failed to return A.M. within 30 days of December 28, 2015, a date on which the parties had agreed to exchange custody, McAfee filed a complaint for primary custody in Allegheny County. (TT 76) Shortly thereafter, McAfee filed a Motion for Special Relief alleging that Appellant had inappropriately touched his daughter. (TT 76) McAfee testified that he did not have primary custody when he filed the Motion for Special Relief. *Id.* McAfee testified that as of the date of trial, he and A.M.'s mother continued to share custody of A.M. (TT 81)

A.M., the victim in this case, testified at trial that her birthday is October 15, 2009, making her seven years old, and in first grade. (TT 46, 55) A.M. testified that Appellant, the fiancé of A.M.'s mother, Hoffman, touched her in a way that made her feel uncomfortable. (TT 46-47) A.M. testified that, when she was about two or three years old, Appellant touched her on her "private part" that she

4

uses to "go to the bathroom" where she does "number 1". (TT 47) Her clothes were on when Appellant touched her. (TT 57) She stated that Appellant touched her again when she was around six. (TT 53 and 57) A.M. testified that this happened in more than one location. She testified that Appellant touched her both when she lived in Erie and when she lived with him in Pittsburgh. (TT 47-48) A.M. stated that her mother and brothers were living in the house when "these things happened" and that sometimes her mother was in the shower when she got touched, but was never in the room. (TT 48-49) A.M. testified that the duration of time that Appellant touched her varied. (TT 49) A.M. testified Appellant instructed her not to tell anyone. (TT 52) A.M. testified that the touching stopped when she moved to Meadville, where her "Nana" lives. (TT 53) A.M. identified Appellant at trial as the person who had touched her inappropriately. (TT 55)

A.M. testified that she talked to "Miss Jaime" (Jaime Mesar, of the Child Advocacy Center in Children's Hospital of Pittsburgh) about Appellant touching her on two occasions, the first in December 2014. (TT 49, 57) At the first forensic interview, A.M. did not make any disclosures. A.M. testified that she did not tell the truth about Appellant touching her during the first interview because she was scared she would not be able to see her mother again. (TT 50) A.M. testified that before the first interview, her mother had told her to tell "a different truth", a lie, that Appellant did not touch her inappropriately. (TT 51) In a second interview, however, A.M. testified that she told the truth, the truth being that Appellant had touched her inappropriately. *Id.* She testified that no one told her what to say during the second interview or at trial. (TT 52) She stated that her father told her to tell the truth when she testified at trial. (TT 60) The first time she was interviewed she lived with her mother, and the second time she was interviewed she lived with her father. (TT 59)

Hoffman testified that she met Appellant in June of 2011 when A.M. was one and a half years old. (TT 139) She stated that Appellant moved in with her in September of 2011 when she lived in Erie. (TT 139) She testified that Appellant would watch the kids while she was at work. (TT 140)

She stated that she first became aware of the allegations A.M. made when CYF appeared at her Pittsburgh home in December 2014. (TT 140) Hoffman stated that she never saw Appellant do anything inappropriate to A.M. (TT 141) She said that A.M. never communicated to her any fear of Appellant or said that Appellant was mean to her. (TT 141) She stated that McAfee filed a custody complaint in February 2016. (TT 142) With respect to the incident which led to McAfee filing for primary custody, she stated that she had planned on returning A.M. to McAfee at the agreed upon time, but that she failed to do so. (TT 143) She admitted that she had made statements to Detective Sellers about A.M. masturbating, but claimed that she had not personally observed that behavior. (TT 146)

Detective Sellers was recalled and testified that he spoke with Hoffman prior to the December 2014 forensic interview and he believed there were numerous inconsistencies in Hoffman's prior statements to him during the course of his investigation and her testimony at trial. (TT 166) Hoffman told him at the pre-interview that she had known about A.M.'s masturbating for over a year and her response had been to put a blanket over A.M. when she observed this behavior. (TT 167) Det. Sellers also said that Hoffman had denied any custody dispute during the 2014 interview. (TT 168) He stated that when he talked to McAfee in 2016, McAfee informed him that there had been a court-ordered change in custody between 2014 and 2016. (TT 170-171) Further, Detective Sellers testified that, contrary to Hoffman's testimony at trial that she had not previously spoken with the Detective, the Detective had, in fact, spoken to Hoffman at the pre-interview. *Id.*

Appellant testified that he had known A.M. since she was one, before she could walk. (TT 130) He testified that he moved in with Hoffman and A.M. and they lived together in Erie for about two years. (TT 130) He admitted that he would watch A.M. at times when Hoffman was at work. (TT 131) He testified that he became aware of the allegation that he inappropriately touched A.M. when CYF knocked on his door two years ago. *Id.* Appellant stated that he never touched A.M.'s

private parts and proclaimed, "That's disgusting". (TT 132) He said that he never told A.M. to look up at the butterflies. (TT 132)

## DISCUSSION

Appellant alleges that the evidence was insufficient to convict him of Unlawful Contact, in that the Commonwealth failed to establish beyond a reasonable doubt that Appellant had contact with the victim. 18 Pa.C.S. § 6318(a) states, in relevant part:

§ 6318. Unlawful Contact with Minor

(a) Offense defined.-- A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

The word "contact" is defined for purposed of this section as follows:

"Contacts." Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S. § 6318 (a) (1), (c).

"[Unlawful contact with a minor] is best understood as unlawful communication with a minor." *Commonwealth v. Leatherby*, 116 A.3d 73, 79 (Pa. Super. 2015). In *Commonwealth v. Velez*, the Superior Court of Pennsylvania addressed the type of communication or contact necessary to sustain a conviction for unlawful contact. *Commonwealth v. Velez*, 51 A.3d 260 (Pa.Super.2012). "[T]his Court concluded that, despite the lack of evidence of overt verbal communication, it was reasonable to infer that the defendant communicated with the victim, either nonverbally or verbally, to assume the position in which she was found by her mother." *Id.* "Once the Appellant intentionally contacts or communicates with the minor for the purpose of engaging in the prohibited activity the crime of

7

unlawful contact with a minor has been completed. The actual physical touching of an intimate part of the victim's body, with the requisite purpose of arousing or gratifying sexual desire, is not an element of the crime contemplated in § 6318." *Commonwealth v. Evans*, 901 A.2d 528, 537 (Pa. Super. 2006).

The jury verdict of guilty on the count of Unlawful Contact was supported by the physical acts, the direct contact of Appellant with A.M., as well as his statements to her in connection with the physical actions. When Appellant inappropriately touched the child, he told her not to tell. Furthermore, Appellant told the child to look up, saying to her "that's where the butterflies are" so that he could distract her while he touched her inappropriately. These two statements constitute communication to A.M. for the purpose of engaging in prohibited activity. The direct contact and the two statements made by Appellant to the child were sufficient to support his conviction of Unlawful Contact with Minor.

Appellant further alleges that the verdicts were against the weight of the evidence. The standard for a "weight of the evidence" claim is as follows:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Cousar*, 928 A.2d 1025, 1035–36 (Pa. 2007).

The trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa. Super. 2001); *appeal denied*, 796 A.2d 979 (Pa. 2001). The jury reasonably found credible the testimony of the victim, A.M. She testified at trial consistent with her 2016 forensic interview

8

about two specific instances of unlawful contact, but she also testified that Appellant inappropriately touched her more than twice, at separate locations and over an extended period of time. Her testimony was corroborated by that of her father and Detective Sellers. The jury reasonably rejected Appellant's self-serving denial. Upon further review of the evidence, this Court's sense of justice is not shocked by the jury's verdict in this case as it was not against the weight of the evidence but rather supported by it.

Appellant next alleges that this Court erred in either quashing Defendant's Motion to Compel Production of PAAR (Pittsburgh Action Against Rape) records pertaining to the victim or in quashing his subpoena to PAAR for said records. The PAAR records are privileged under 42 Pa.C.S. § 5945.1 (b), which states:

> 1) No sexual assault counselor or an interpreter translating the communication between a sexual assault counselor and a victim may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.
>
> (2) No coparticipant who is present during counseling may disclose a victim's confidential communication made during the counseling session nor consent to be examined in any civil or criminal proceeding without the written consent of the victim.

42 Pa. C.S. § 5945.1. This privilege "is intended to be absolute, applying to the production of the documents therein described as well as to the testimony of counselors as explicitly stated". *Commonwealth v. Wilson*, 529 Pa. 268, 278, (1992).

The privilege attached to the PAAR records is absolute, a point conceded by Appellant. (Statement of Matters Complained of paragraph 3) Appellant apparently argues that § 5945.1 is unconstitutional in that it violates his rights to due process, a fair trial, and to confront witnesses, because he was not able to access the PAAR records. In the context of § 5945.1 privileged documents, the Pennsylvania Supreme Court in *Wilson* held:

> [the] Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever

9

extent, the defense might wish. Thus, the right to confront one's witnesses is satisfied if defense counsel receives wide latitude at trial to question witnesses.

*Id.* at 279. In terms of the due process rights, *Wilson* stated:

> [T]he enactment of an absolute privilege indicates the Commonwealth's compelling interest in protecting the confidentiality of the rape victim's records. The broadly drawn privilege is nevertheless narrowly tailored to achieve the compelling interest in protecting the victim's privacy so that her treatment and recovery process will be expedited. Therefore, defendant's federal constitutional rights have not been violated.

*Id.* at 281.

The court in *Wilson* held that this privilege does not bar effective cross-examination nor does it violate Appellant's due process rights. The privilege is narrowly tailored to achieve a compelling interest in protecting the victim's privacy. Therefore, this Court did not err in quashing the Motion to Compel Production of PAAR Records.

## CONCLUSION

For all of the above reasons, no reversible error occurred and the findings and rulings of this Court should be AFFIRMED.

BY THE COURT:

_Jill E Rangos_ J.
JILL E. RANGOS